IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHARLES DAGIT and MARYKATE    :
DAGIT    :
    :    CIVIL ACTION
    v.    :
    :    NO.  16-3843
ALLSTATE PROPERTY AND    :
CASUALTY  INSURANCE COMPANY  :

O'NEILL, J.                   January 30, 2017

## MEMORANDUM

The present action involves a dispute over amounts owed under a homeowner's insurance policy issued to plaintiffs Charles and MaryKate Dagit by defendant Allstate Property and Casualty Insurance Company.  Defendant currently moves to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, I will grant the motion to dismiss the breach of contract claim, but deny the motion to dismiss the bad faith claim.

## FACTUAL BACKGROUND

Defendant Allstate Property and Casualty Insurance Company issued a policy of insurance to plaintiffs covering plaintiff's property located at 124 Gulph Hills Road, Wayne, PA 19087.  Am. Compl., ECF No. 10, ¶ 5.  On June 22, 2015, while the policy was in full force and effect, plaintiffs suffered sudden and accidental physical damages to the insured premises caused by a windstorm, rain and a fallen tree.  Id. ¶ 6.  Plaintiffs gave timely notice of the loss to defendant.  Id. ¶ 7.  They claimed to have incurred resulting expenses of $12,000 for the removal of storm-damaged trees from the house, $1,650 for emergency tarping of the storm-damaged

roof and $13,887.01 for emergency water mitigation and restoration services.  Id. ¶¶ 8–10.

Moreover, because of the extent of the damage, plaintiffs were obligated to hire a registered

design professional to submit permits to Upper Merion Township for the repair/rebuild of the

property.  Id. ¶ 11.

Plaintiff received three estimates to repair the damage to the premises in the amounts of

$188,986.85, $190,890 and $271,424, all of which were submitted to defendant in a timely

manner.  Id. ¶¶ 13–16.  Defendant, however, did not complete its estimate for the storm damage

until September 27, 2015, when it submitted an estimate valuing the cost to repair the insured

premises at $140,724.43.  Id. ¶ 17. Defendant would not recognize, accept or pay for the costs

and expenses incurred by plaintiffs for services rendered by the registered design professional,

despite the fact that it knew these services were required by Upper Merion Township in order to

rebuild.  Id. ¶ 18.

Because of the disagreement as to the amount of loss, and pursuant to the terms of the

policy, plaintiffs demanded an appraisal by notice dated November 10, 2015, and named their

appraiser on November 25, 2015.  Id. ¶ 19 & Exs. 12–14.  Although the policy required

defendant to identify its appraiser within twenty days of the demand notice, the defendant did not

do so until after two follow-up e-mails sent by plaintiffs' representative on December 2, 2015

and December 21, 2015.  Id. ¶¶ 20–21.  Eventually, defendant identified its appraiser, who then

delayed in contacting plaintiffs' appraiser to identify an umpire.  Id. ¶ 22.  In turn, the entire

appraisal process was delayed for an extensive period of time causing stress to plaintiffs who

were then residing in substitute premises.  Id. ¶ 22.  Prior to the completion of the appraisal, the

policy's one-year limitation for additional living expenses expired, resulting in plaintiffs having

to expend their own funds for substitute living arrangements.  Id. ¶¶ 23–24.  On September 30,

2016, following review by a mutually-agreed upon umpire, an appraisal award was entered in the amount of $128,764.74.  Def.'s Mot. to Dismiss, ECF No. 11, ¶ 12; Pl.'s Resp. Opp'n Mot. to Dismiss, ECF No. 12, ¶ 12.

The policy specifically provides that any legal action against defendant must be commenced within one year from the date of loss.  Id.  ¶ 25.  Because of Allstate's delay in complying with the appraisal provision, plaintiffs faced a potential time bar in bringing legal action.  Id. ¶ 26.  Accordingly, on June 23, 2016, plaintiffs filed a complaint against defendant in the Philadelphia County Court of Common Pleas setting forth two causes of action:  (1) breach of contract and (2) bad faith under 421 Pa.C.S. § 8371.  Defendant subsequently removed the case to federal court on July 15, 2016.  Notice of Removal, ECF No. 1.  Plaintiffs filed an amended complaint on November 16, 2016, Am. Compl., ECF No. 10, and defendant moved to dismiss on November 30, 2016.  Def.'s Mot. to Dismiss, ECF No. 11.  Plaintiffs responded on December 14, 2016, Pls.' Resp., ECF No. 12, and defendant filed a reply brief on December 16, 2016.  Def.'s Reply, ECF No. 13.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and  "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Ashcroft v. Iqbal, 556 U.S. 662,

678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  Id.  A complaint does not show an entitlement to relief when the well-pleaded facts do

not permit the court to infer more than the mere possibility of misconduct.  Id.

The Court of Appeals has established a two-part analysis for review of a Rule 12(b)(6)

motion.  First, the well-pled factual allegations of the claim must be separated and accepted as

true, while the legal conclusions are disregarded.  Fowler v. UPMC Shadyside, 578 F.3d 203,

210–11 (3d Cir. 2009).  Second, the court must make a common sense determination as to

whether the facts alleged in the complaint are sufficient to state a plausible claim for relief.  Id. at

211.  If the court can only infer the possibility of misconduct, the complaint must be dismissed

for failure to "show" an entitlement to relief.  Id.

## DISCUSSION

Defendant's motion asks that I dismiss plaintiffs' complaint in its entirety.  Specifically,

it argues that the breach of contract claim is not viable.  Moreover, it contends that plaintiffs

have failed to adequately plead a bad faith claim.  Addressing these arguments individually, I

will grant the motion as to the breach of contract claim, but deny it as to the bad faith claim.

## I.     Breach of Contract

Defendant first seeks dismissal of plaintiffs' breach of contract claim.  Specifically,

defendant contends that the appraisal award is binding on all parties and may not be set aside by

the court absent a showing of fraud, deception or mistake on the part of the appraisers.  As I

agree, I will dismiss the claim.[1]

_____

[1]     Defendant also argues that the policy contains an appraisal provision, which is a condition
precedent to suit under the policy.  Because plaintiffs failed to complete this appraisal procedure
prior to bringing suit, defendant claims that the legal action is premature under the policy.  I find

In Pennsylvania, the interpretation of an insurance contract is a question of law.  <u>401 Fourth St., Inc. v. Investors Ins. Grp.</u>, 879 A.2d 166, 170 (Pa. 2005).  The task of interpreting an insurance contract is generally performed by the court rather than a jury, and "[t]he purpose of that task is to ascertain the intent of the parties as manifested by the terms used in the written insurance policy."  <u>Id.</u> at 171.  "[A]ll provisions of an insurance contract . . . [must be] read together and construed according to the plain meaning of the words involved, so as to avoid ambiguity while at the same time giving effect to all of its provisions."  <u>Masters v. Celina Mut. Ins. Co.</u>, 224 A.2d 774, 776 (Pa. Super. Ct. 1966).  Where no genuine issues of material fact exist and "[w]hen the language of the policy is clear and unambiguous, a court is required to give effect to that language."  <u>401 Fourth Street</u>, 879 A.2d at 171.

"Appraisal clauses in insurance contracts are enforceable and recognized under Pennsylvania law as favored alternate dispute resolution mechanisms."  <u>Santora v. Commercial Union Ins. Co.</u>, No. 96-6962, 1998 WL 83966, at *2 (E.D. Pa. Feb. 26, 1998).  The well-established public policy of Pennsylvania encourages the settlement of disputes about the amount

---

no merit to this argument.  The policy at issue provides, in pertinent part, that "[n]o one may bring an action against [defendant] in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, unless there has been full compliance with all policy terms."  Am. Compl., Ex. 1, ECF No. 10-1, at 19.  Defendant claims that this provision bars plaintiff's claims.  The Pennsylvania Supreme Court has held, however, that "if appraisal is not requested, or the request is fruitless, or appraisal proceedings are inclusive or abandoned by the parties' joint consent or liability is denied, then the appraisal provision in the contract may not bar the insured from bringing an action for relief in the courts."  <u>Ice City, Inc. v. Ins. Co. of N. Am.</u>, 314 A.2d 236, 239 (Pa. 1974) (footnotes omitted).  In this case, plaintiffs assert that defendant unreasonably delayed, first, in naming its appraiser despite a clear demand and, second in directing its appraiser to contact plaintiffs' appraiser for purposes of obtaining an umpire.  Indeed, despite the fact that the loss occurred on June 22, 2015, and plaintiffs' demand for appraisal was made on November 10, 2015, the appraisal process was not completed until September 30, 2016.  The policy requires that any action under it be brought within one year after the inception of loss or damage.  Am. Compl., Ex. 1, ECF No. 10-1, at p. 19.  To avoid being foreclosed from suit by this provision, plaintiffs had no choice but to institute their action prior to appraisal being completed.  Therefore, I find that the appraisal provision did not bar plaintiffs from bringing their action for relief.

of loss by appraisal.  Ice City v. Ins. Co. of N. Am., 314 A.2d 236, 240 (Pa. 1974) ("[A]ppraisal

is an entirely appropriate means for settling the dispute, and is indeed the favored practice.").  A

condition precedent to appraisal is that there be an admission of liability and a dispute only as to

the dollar value of the loss.  Id.; see also Williamson v. Chubb Indem. Ins. Co., No. 11-6476,

2012 WL 760838, at *4 (E.D. Pa. Mar. 8, 2012).

Once a dispute over the amount of loss under an insurance policy has been resolved

through the appraisal process, the judicial scope of review is limited.  Riley v. Farmers Fire Ins.

Co., 735 A.2d 124, 128 (Pa. Super. Ct. 1999).  A court may review the appraisal only for fraud,

misconduct, corruption or other irregularity causing an unjust result.  Boulevard Assocs. v. The

Seltzer P'ship, 664 A.2d 983, 987 (Pa. Super. Ct. 1995); see also Patriotic Order Sons of Am.

Hall Ass'n v. Hartford Fire Ins. Co., 157 A. 259, 261 (Pa. 1931) ("[A]n award of arbitrators or

appraisers, such as is provided for in the policy in this case and in the agreement of submission,

cannot be set aside except for actual fraud or deception or for a mistake on the part of the

appraisers which is not a mere mistake of judgment.").  In addition, the court may examine the

appraisers' scope of authority and whether they have exceeded it.  Riley, 735 A.2d at 128, citing

Boulevard Assocs., 664 A.2d at 987.  The Pennsylvania Superior Court explained that "[l]imited

judicial review . . . imposes finality in a contested matter.  To permit anything but limited

judicial review defeats the purpose of appraisal as well as arbitration."  Boulevard Assocs., 664

A.2d 987; see also Santora v. Commercial Union Ins. Co., No. 96-6962, 1998 WL 83966, at

*2 (E.D. Pa. Feb. 26, 1998) ("An appraisal made pursuant to the provisions of an insurance

contract binds the parties by conclusively establishing the amount of the insured's loss.").

In the present case, the appraisal clause at issue states:

> If **you** and **we** fail to agree on the amount of loss, either party may
> make written demand for an appraisal.  Upon such demand, each

party must select a competent and impartial appraiser and notify
the other of the appraiser's identity within 20 days after the
demand is received.  The appraisers will select a competent and
impartial umpire.  If the appraisers are unable to agree upon an
umpire within 15 days, **you** or **we** can ask a judge of a court of
record in the state where the residence premises is located to select
an umpire.  If the appraisers are unable to agree upon an umpire
within 15 days, **you** or **we** can ask a judge of a court of record in
the state where the **residence premises** is located to select an
umpire.

The appraisers shall then determine the amount of loss, stating
separately the actual cash value and the amount of loss to each
item.  If the appraisers submit a written report of an agreement to
**you** and to **us** the amount agreed upon shall be the amount of loss.
If they cannot agree, they will submit their differences to the
umpire.  A written award agreed upon by any two will determine
the amount of loss.

Each party will pay the appraiser it chooses, and equally bear
expenses for the umpire and all other appraisal expenses.

Am. Compl., Ex. 1, ECF No. 10-1, at pp. 19–20 (emphasis in original).

Plaintiffs concede that defendant accepted coverage for plaintiffs' loss and that the claim

proceeded to appraisal after a dispute arose as to the value of the loss.  They rest their breach of

contract claim on the allegation that "Allstate has breached its contract of insurance to fully

indemnify Dagit for their covered loss, and Allstate has breached its contract despite submission

of reasonable proof and demand for full and complete payment of benefits."[2]  Notably, they do

not argue that any fraud, misconduct, corruption or other irregularity tainted the appraisal

process.  Nor do they contend that the appraisers exceeded their authority.  Am. Compl., ECF

---

[2]     Notably, despite having two opportunities to craft their complaint, plaintiffs have not
alleged a breach of contract based on defendant's failure to adhere to the appraisal provisions of
the policy.

No. 10, ¶ 30.  Absent one of those irregularities, I must deem the appraisal amount final and dismiss plaintiffs' breach of contract claim.

## II.      Bad Faith Claim

Defendant next argues that plaintiff's bad faith claim must be dismissed as meritless. Upon review of the amended complaint's allegations, I must disagree.[3]

The Pennsylvania legislature has created a statutory remedy for an insurer's bad faith conduct.  The statute provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. § 8371.  "In Pennsylvania, 'bad faith' in insurance cases is defined as 'any frivolous or unfounded refusal to pay proceeds of a policy.'"  Mirarchi v. Seneca Specialty Ins. Co., 564 F. App'x 652, 655 (3d Cir. 2014), quoting Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994).  Bad faith must be demonstrated by clear and convincing evidence.  Mirarchi, 564 F. App'x at 655.

---

[3]      It is well established that a claim for bad faith brought against an insurer pursuant to 42 Pa. C.S. § 8371 is a separate and distinct cause of action and is not contingent on the resolution of the underlying contract claim.  Doylestown Elec. Supply Co. v. Maryland Cas. Ins. Co., 942 F. Supp. 1018, 1019–20 (E.D. Pa. 1996), citing March v. Paradise Mut. Ins. Co., 646 A.2d 1254, 1256 (Pa. Super. Ct. 1994).  Thus, if bad faith is asserted as to conduct beyond a denial of coverage, the bad faith claim is actionable as to that conduct regardless of whether the contract claim survives.  Gold v. State Farm Fire & Cas. Co., 880 F. Supp. 2d 587, 597–98 (E.D. Pa. 2012), citing Gallatin Fuels, Inc. v. Westchester Fire Ins. Co., 244 F. App'x 424, 435 (3d Cir. 2007).

"'Section 8371 is not restricted to an insurer's bad faith in denying a claim.  An action for bad faith may extend to the insurer's investigative practices.'"  Condio v. Erie Ins. Exch., 899 A.2d 1136, 1142 (Pa. Super. Ct. 2006), quoting O'Donnell v. Allstate Insurance Company, 734 A.2d, 901, 906 (Pa. Super. Ct. 1999).  Moreover, a bad faith insurance practice can include an unreasonable delay in handling or paying claims.  Ania v. Allstate Ins. Co., 161 F. Supp. 2d 424, 430 (E.D. Pa. 2001).  Stated differently, even when "an insurance claim has been settled and paid, Pennsylvania's bad faith statute provides insurance claimants a means of redressing unreasonable delays by their insurers."  Willow Inn, Inc. v. Pub. Serv. Mut. Ins. Co., 399 F.3d 224, 235 (3d Cir. 2005).  Notably, a long period of time between demand and settlement does not, on its own, necessarily constitute bad faith.  Kosierowski v. Allstate Ins. Co., 51 F. Supp. 2d 582, 589 (E.D. Pa. 1999), aff'd, 234 F.3d 1265 (3d Cir. 2000).  Thus, "if delay is attributable to the need to investigate further or even to simple negligence, no bad faith has occurred."  Williams v. Hartford Cas. Ins. Co., 83 F. Supp. 2d 567, 572 (E.D. Pa. 2000), quoting Kosierowski, 51 F. Supp. 2d at 589.  The primary consideration is "the degree to which a defendant insurer *knew* it had no basis to deny the claimant."  Id., quoting Kosierowski, 51F. Supp. 2d at 589 (emphasis in original).  Therefore, to establish a claim of bad faith based on the insurer's delay in paying the claim, the plaintiff must show that (1) the delay was attributable to the insurer; (2) the insurer had no reasonable basis for causing the delay; and (3) the insurer knew or recklessly disregarded the lack of a reasonable basis for the delay.  Mirarchi, 564 F. App'x at 655–56.

In the present case, plaintiffs allege they demanded an appraisal on November 10, 2015. Am. Compl. ¶ 19 & Ex. 12–14.  Despite the policy's requirement that defendant identify its appraiser within twenty days after a demand, defendant failed to do so, necessitating follow-up

by plaintiff's representative on both December 2, 2015 and December 21, 2015.  Id. ¶¶ 20, 21 &

Exs. 13 & 14.  Eventually, and in excess of the twenty-day period, defendant selected an

appraiser.  Id. ¶ 22.  Nonetheless, according to the amended complaint, defendant's appraiser

delayed in contacting plaintiff's appraiser for the purpose of identifying an umpire, resulting in

further delay in the appraisal process.  Id.  During this time, plaintiffs had to reside in substitute

premises because their storm-damaged home was uninhabitable.  Id.  As the appraisal had yet to

be completed as of June 22, 2016, plaintiffs exhausted the policy's payment of additional living

expenses—which were limited to one year from the date of the loss—and were required to

expend their own funds for substitute living arrangements.  Id.  ¶¶ 23–24.  In addition, as a result

of the delay in the appraisal process, plaintiffs had to retain counsel and commence legal action

against defendant to avoid a time bar under the limitations period in the policy.  Id. ¶¶ 25–26.

Ultimately, the appraisal process was not completed until September 30, 2016.  Def.'s Mot. to

Dismiss ¶ 12.

　　　Such facts sufficiently plead a plausible claim for bad faith.  Taken as true, these

allegations indicate that the delay was entirely attributable to defendant given its failure to timely

identify the appraiser as required by policy.  Moreover, defendant fails to offer any reasonable

basis for causing the delay through its untimely compliance with the policy's appraisal provision.

Finally, the allegations of the amended complaint allow the proper inference that defendant knew

or recklessly disregarded the lack of a reasonable basis for the delay.  As plaintiffs have properly

stated a bad faith claim upon which relief may be granted, I will deny defendant's motion to

dismiss this claim.[4]

---

[4]　　　In their response to the motion to dismiss, plaintiffs articulate "thirteen averments" which
purportedly form the basis of the bad faith claim.  Pl.'s Mem. Supp. Resp. Mot. to Dismiss, ECF
No. 12, at p. 11.  Notably, these thirteen averments do not appear in the amended complaint.

**CONCLUSION**

In light of the foregoing, I will grant defendant's motion to dismiss in part and deny it in part.  With respect to plaintiffs' breach of contract claim set forth in count I of the amended complaint, I will dismiss it given the limited scope of judicial review of an appraiser's decision and plaintiffs' failure to set forth any claims of fraud, misconduct, corruption or other irregularity causing an unjust result in the appraisal process.  With respect to count II of the amended complaint, I find, at this early stage of the litigation, that plaintiffs' allegations regarding defendants' unreasonable delays of the appraisal process sufficiently plead a claim of statutory bad faith.  Therefore, I will dismiss count I and allow count II to proceed to discovery.

An appropriate order follows.

---

Rather, the bad faith claim appears to be limited to the delay in the appraisal process.  Moreover, to the extent plaintiffs intend to argue that defendant's alleged undervaluing of plaintiff's policy claim constitutes bad faith, I cannot allow this claim to proceed.  "Plaintiffs' disagreement with Defendants over the value of their claims is simply not a basis for a contractual bad faith claim where Plaintiffs have not shown that Defendants breached some contractual duty."  Rowe v. Nationwide Ins. Co., 6 F. Supp. 3d 621, 629 (W.D. Pa. 2014).  Having already dismissed the breach of contract claim related to the alleged undervaluing of plaintiffs' claim, I must likewise dismiss a bad faith claim premised on the same facts.