IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES DAGIT and MARYKATE DAGIT : : : v. : : ALLSTATE PROPERTY AND : CASUALTY INSURANCE COMPANY : | CIVIL ACTION NO. 16-3843 |

O'NEILL, J.                                                                                           June 8, 2017

## MEMORANDUM

The present case involves an ongoing dispute between plaintiffs, husband and wife Charles and MaryKate Dagit, and their homeowner's insurer, defendant Allstate Property and Casualty Insurance Company, regarding the amount of loss plaintiffs sustained to their property during a June 2015 storm. In a previous order, I dismissed plaintiffs' breach of contract claim, but left intact plaintiffs' bad faith claim. Defendant's present motion seeks summary judgment pursuant to Federal Rule of Civil Procedure 56 with respect to this remaining bad faith claim. For the following reasons, I will grant Allstate's motion.

## FACTUAL BACKGROUND

Defendant Allstate issued a policy of insurance covering plaintiffs' property located at 124 Gulph Hills Road, Wayne, PA 19087. Def.'s Mot. Summ. J., ECF No. 23, Ex. 3A. The policy was comprised of a Homeowners Policy Form APC 215, a Pennsylvania Amendatory Endorsement Form AP4794, an Extended Protection Amendatory Endorsement Form APC232, and a Sinkhole Activity Coverage Endorsement Form AP4869. Id. It also contained an appraisal provision, which mandated as follows:

> If **you** and **we** fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand, each party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the residence premises is located to select an umpire. If the appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire.
>
> The appraisers shall then determine the amount of loss, stating separately the actual cash value and the amount of loss to each item. If the appraisers submit a written report of an agreement to **you** and to **us** the amount agreed upon shall be the amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award agreed upon by any two will determine the amount of loss.
>
> Each party will pay the appraiser it chooses, and equally bear expenses for the umpire and all other appraisal expenses.

Id. at 19–20 (emphasis in original).

On June 22, 2015, while the policy was in full force and effect, plaintiffs suffered sudden and accidental physical damages to the insured premises caused by a windstorm, rain and a fallen tree. Am. Compl., ECF No. 10, ¶ 6. Plaintiffs gave timely notice of the loss to defendant, claiming they incurred expenses ranging from between approximately $190,000 to approximately $270,000. Id. ¶¶ 7–15. Moreover, due to the extent of the damage, plaintiffs were obligated to hire a registered design professional to submit permits to Upper Merion Township for the repair/rebuild of the property. Id. ¶ 11.

Because Allstate and plaintiffs disagreed on the amount of loss,[1] Brian DiBricida of Young Adjustment Company, Inc., working on behalf of plaintiffs, demanded an appraisal through a November 10, 2015 notice to Allstate. Def.'s Mot. Summ. J., ECF No. 23, Ex. 3D. On November 24, 2015, Allstate sent plaintiffs additional correspondence to "update" them on "the status of the claim." Pls.' Supp. Resp. Opp'n, ECF No. 27, Ex. 26. Allstate further noted that its investigation of the loss was continuing and the claim was pending appraisal review. Id. On November 25, 2015, DiBricida e-mailed Allstate, notifying it that plaintiffs were naming Joel Heffelfinger as their appraiser and requesting that defendant forward the name and contact information of its appraiser. Id., Ex. 27. When Allstate did not respond, DiBricida again emailed defendant on December 2, 2015, advising that "Allstate may be in violation of the insuring agreement by not declaring the name of their appraiser within the 20-days of receiving the insured's demand for appraisal." Id., Ex. 28. Then again, on December 21, 2015, DiBricida emailed Allstate claiming that it had ignored its obligations under the policy by not naming an appraiser, and threatening to file a bad faith claim if no response was received by January 8, 2016. Id., Ex. 29.

On December 15, 2015, just prior to this last e-mail, Allstate sent DiBricida a notice acknowledging plaintiff's written request dated November 10, 2015, but stating that "[t]o start the appraisal process, [Allstate] must have a signed request for appraisal from a named policyholder Charles Dagit." Def.'s Mot. Summ. J., ECF No. 23, Ex. 3D. It further noted that upon receipt of the signed request from the insured, it would name CIS as its appraiser. Id.

---

[1] Plaintiffs offer an extensive description of the back-and-forth dialogue between themselves and defendant regarding the value of the damages to the home and what sum plaintiffs were entitled to recover under the policy. As I explained in my January 30, 2017 memorandum and order, however, the bad faith claim is limited strictly to the delay in the appraisal process and may not be based on plaintiffs' disagreement with defendant over the valuation of their claims. Mem. & Order, ECF No. 14, at p. 10 n.4.

DiBricida responded on December 21, 2015, both emphasizing that his contract with the plaintiffs gave him the ability to demand appraisal on their behalf and questioning defendant's motives for waiting over five weeks to seek plaintiffs' signed request for appraisal if it was required. Pl.'s Supp. Resp. Opp'n, ECF No. 27, Ex. 30. Nonetheless, the letter attached Charles Dagit's signed demand for appraisal, which stated that "[t]his will serve as notice that the demand for appraisal submitted by Young Adjustment Company, Inc. on November 10, 2015 was requested on our behalf." Id. The notice further reiterated that plaintiffs had chosen Joel Heffelfinger as their appraiser. Id.

On January 4, 2016, Victor Hoffman of CIS Specialty Claim Services acknowledged his assignment as Allstate's appraiser. Def.'s Mot. Summ. J., ECF No. 23, Ex. 3F. Mr. Hoffman first attempted to contact Mr. Heffelfinger on January 6, 2016. Id., Ex. 3G. On January 15, 2016, however, Mr. Heffelfinger advised Mr. Hoffman that he had not yet obtained a signed contract from plaintiffs and would not proceed until that contract was received. Id., Ex. 3G. Plaintiffs then executed a consulting/appraisal service agreement on January 27, 2016. Id., Ex. 3L. Mr. Hoffman and Mr. Heffelfinger subsequently executed the Declaration of Appraisers on January 30, 2017 and February 1, 2017 respectively. Id., Ex. 3H.

On February 17, 2016, both Mr. Hoffman and Mr. Heffelfinger inspected the property. Id., Ex 3I. In a narrative report, issued September 30, 2016, Mr. Hoffman detailed his appraisal inspection, which included interviews with plaintiffs' engineer, architect and contractor, the Township building inspector and Allstate's engineer. Id. Mr. Heffelfinger similarly engaged in additional appraisal investigation between March 25 and April 4, 2016—including a return visit to the property and communication with Creative Comfort Solutions regarding HVAC issues. Id., Exs. 3K. He prepared two revised versions of his estimates and submitted the third version

to Mr. Hoffman on May 12, 2016.  Id.  On May 13 and 16, 2016, Mr. Heffelfinger and Mr. Hoffman discussed the claim.  Id.

On June 10, 2016, plaintiff Charles Dagit e-mailed Mr. Hoffman asking that the appraisal process be completed "in the most timely way possible."  Id., Ex. 3M.  Mr. DiBridica responded asking that Mr. Dagit not directly contact Mr. Hoffman regarding the appraisal, but rather that he run everything through either himself or Mr. Heffelfinger.  Id.  Mr. DiBridica further commented that Mr. Heffelfinger was in Florida for his mother's funeral and that Mr. Hoffman was "ready to work out the remaining issues but out of respect for [Heffelfinger's] situation did not want to bother him until he returned."  Id.

Mr. Heffelfinger and Mr. Hoffman discussed the claim again on June 17, 2016.  Id., Ex. 3K.  The claim was thereafter submitted to the umpire and the umpire meeting took place on July 5, 2016.  Id., Ex. 3I.  On September 30, 2016, the umpire issued the appraisal award in the amount of $128,764.74.  Id., Ex. 3B.

Prior to the completion of the appraisal, the policy's one-year limitation for additional living expenses expired.  On June 23, 2016, plaintiffs filed a complaint against defendant in the Philadelphia County Court of Common Pleas setting forth two causes of action:  (1) breach of contract and (2) bad faith under 42 Pa.C.S. § 8371.  Defendant subsequently removed the case to federal court on July 15, 2016.  Notice of Removal, ECF No. 1.  On January 30, 2017, I issued an order granting defendant's motion to dismiss plaintiffs' breach of contract claim, but denying the motion as to the bad faith claim.  Mem. & Order, ECF No. 15.

On April 7, 2017, defendant filed a motion for judgment on the pleadings.  Def.'s Mot. Summ. J., ECF No. 23.  I converted the motion to a motion for summary judgment and, by May 19, 2017, all supplemental briefing was complete.

5

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id. To establish "that a fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

On summary judgment, the moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004). It is not the court's role to weigh the disputed evidence and decide which is more probative or to make credibility determinations. Boyle v. Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998), citing Petruzzi's IGA Supermkts., Inc. v. Darling-Del. Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993). Rather, the court must consider the evidence, and all reasonable inferences that may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 587 (1986), citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).

Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims." Id. at 325. If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. The adverse party must raise "more than a mere scintilla of evidence in its favor" and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). The mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. Anderson, 477 U.S. at 249–50.

## DISCUSSION

The Pennsylvania legislature has created a statutory remedy for an insurer's bad faith conduct, as follows:

> In an action arising under an insurance policy, if the court finds
> that the insurer has acted in bad faith toward the insured, the court
> may take all of the following actions:
> (1) Award interest on the amount of the claim from the date the
> claim was made by the insured in an amount equal to the prime
> rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

7

42 Pa. Cons. Stat. § 8371.  "In Pennsylvania, 'bad faith' in insurance cases is defined as 'any frivolous or unfounded refusal to pay proceeds of a policy.'" Mirarchi v. Seneca Specialty Ins. Co., 564 F. App'x 652, 655 (3d Cir. 2014), quoting Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994).  Bad faith must be demonstrated by clear and convincing evidence.  Mirarchi, 564 F. App'x at 655.

"'Section 8371 is not restricted to an insurer's bad faith in denying a claim.  An action for bad faith may extend to the insurer's investigative practices.'"  Condio v. Erie Ins. Exch., 899 A.2d 1136, 1142 (Pa. Super. Ct. 2006), quoting O'Donnell v. Allstate Insurance Company, 734 A.2d, 901, 906 (Pa. Super. Ct. 1999).  Moreover, a bad faith insurance practice can include an unreasonable delay in handling or paying claims.  Ania v. Allstate Ins. Co., 161 F. Supp. 2d 424, 430 (E.D. Pa. 2001).  Thus, even when "an insurance claim has been settled and paid, Pennsylvania's bad faith statute provides insurance claimants a means of redressing unreasonable delays by their insurers."  Willow Inn, Inc. v. Pub. Serv. Mut. Ins. Co., 399 F.3d 224, 235 (3d Cir. 2005).

To establish a claim of bad faith based on the insurer's delay in paying the claim, the plaintiff must show that (1) the delay was attributable to the insurer; (2) the insurer had no reasonable basis for causing the delay; and (3) the insurer knew or recklessly disregarded the lack of a reasonable basis for the delay.  Mirarchi, 564 F. App'x at 655–56.  The plaintiff bears the burden of establishing delay by clear and convincing evidence.  Williams v. Hartford Cas. Co. Ins. Co., 83 F. Supp. 2d 567, 571 (E.D. Pa. 2000), aff'd, 261 F.3d 495 (3d Cir. 2001).  A long period of time between demand and settlement does not, on its own, necessarily constitute bad faith.  Kosierowski v. Allstate Ins. Co., 51 F. Supp. 2d 582, 589 (E.D. Pa. 1999), aff'd, 234 F.3d 1265 (3d Cir. 2000).  "[I]f delay is attributable to the need to investigate further or even to

simple negligence, no bad faith has occurred." Williams, 83 F. Supp. 2d at 572 (quotation omitted) (holding that a delay of fifteen months to resolve a claim—during which the insurer took the insured's deposition nine months after notification of the claim, waited one year before taking the insured's deposition and waited fourteen months to obtain a vocational assessment—was not an unreasonable length of time so as to rise to the level of bad faith, even though the insurer could have completed its investigation with greater speed); Quaciari v. Allstate Ins. Co., 998 F. Supp. 578, 582–83 (E.D. Pa.), aff'd, 172 F.3d 860 (3d Cir. 1998) (holding that even if all delay were attributable to the insurer, a period of approximately thirteen months between notification of UIM claim and resolution of claim through arbitration would not, without more, be sufficient to establish bad faith).

In the present case, plaintiffs spend a substantial portion of their supplemental response laying out the details of the negotiations between the parties regarding the correct value of the claim. They argue that Allstate made initial payments of far less than what the repairs were estimated to cost and refused to pay for various services plaintiffs used in fixing their home. This argument, however, completely disregards the fact that plaintiffs' bad faith claim is premised only on an alleged delay of the appraisal process by Allstate. In my January 30, 2017 Memorandum and Order, I dismissed plaintiffs' breach of contract claim based on the allegation that Allstate undervalued plaintiffs' claim. Mem. & Order, ECF No. 14, at 6–7. Further, I specifically noted that "Plaintiffs' disagreement with Defendants over the value of their claims is simply not a basis for a contractual bad faith claim where Plaintiffs have not shown that Defendants breached some contractual duty." Id. at 11 n.4 (internal quotations omitted). Finally, I expressly found that the amended complaint limited the bad faith claim to the delay in

9

the appraisal process. Accordingly, plaintiffs' current arguments regarding Allstate's alleged bad faith undervaluing of the claim are irrelevant to the present motion.

With respect to any delay in the appraisal process, plaintiffs argue that Allstate's bad faith is demonstrable during two separate time periods. First, they contend that although they demanded an appraisal on November 10, 2015, Allstate did not acknowledge the demand until December 22, 2015, and then did not appoint Victor Hoffman as its appraiser until January 4, 2016. According to plaintiffs, this almost eight-week delay is enough on its own to demonstrate bad faith. Second, plaintiffs claim that, after the site inspection on February 17, 2016, Mr. Hoffman's time was unaccounted for until the umpire meeting on July 5, 2016. Because Allstate knew plaintiffs were accruing additional living expenses that would eventually exceed the duration of coverage under the policy, they argue Mr. Hoffman's delay in completing the inspection demonstrates bad faith.

Assuming *arguendo* that Mr. Hoffman's actions can be imputed to Allstate,[2] I find that the timeline of events set forth by Allstate's evidence—a timeline that plaintiffs do not dispute—precludes a reasonable jury from finding bad faith. With respect to the first alleged delay period, Plaintiffs initially requested appraisal on November 10, 2015 through their adjuster Brian DiBricida of Young Adjustment Company. Although Allstate waited five weeks to inform plaintiffs that they had to personally make the demand rather than submit it through their adjuster, such a de minimis delay does not legally give rise to bad faith. See Kosierowski, 51 F.

---

[2] Allstate argues that the actions of its hired appraiser cannot be attributed to it for purposes of bad faith liability. It contends that, under Pennsylvania law, only an insurer can be liable for bad faith. As Mr. Hoffman is neither an insurer nor an employee of Allstate, and as plaintiffs have produced no evidence that Allstate directed Mr. Hoffman to delay the appraisal process in any way, Allstate asserts that Mr. Hoffman's conduct cannot create bad faith liability on its part.
Without addressing the merits of this argument, I will assume, solely for purposes of this motion, that Mr. Hoffman's actions are attributable to Allstate.

Supp. 2d at 589 (finding that one-month delay between insured's first unequivocal demand for arbitration and insurer's appointment of an arbitrator did not constitute a bad faith delay). Moreover, shortly after receipt of plaintiffs' December 21, 2015 official demand for appraisal, Allstate's appraiser Mr. Hoffman acknowledged his assignment[3] and reached out to plaintiffs' appraiser Mr. Heffelfinger. At that point, Mr. Heffelfinger delayed the appraisal process because he had not yet received a signed contract from plaintiffs and declined to proceed without one. Plaintiffs did not formally engage Mr. Heffelfinger until January 27, 2016, after which Mr. Hoffman and Mr. Heffelfinger executed the Declaration of Appraisers and completed their initial inspections. Nothing in these undisputed facts allows any inference that Allstate acted in bad faith during any portion of this time period.

The absence of bad faith is even more obvious during the time period from February 17, 2016, the date of the inspection, to July 5, 2016, the date of the umpire meeting. The undisputed evidence of record reveals that both Mr. Hoffman and Mr. Heffelfinger engaged in various forms of appraisal investigation during the three-month period between the inspection and their meetings in mid-May, 2016. Mr. Hoffman's report indicated that, following the inspection, he sought lab tests regarding asbestos remediation, conducted "extensive" research regarding Mr. Heffelfinger's claim for engineering and architect fees by engaging in multiple interviews of plaintiffs' engineer and architect and investigated the claimed loss to the HVAC system. Def.'s Mot. Summ. J., ECF No. 23, Ex. 3I. Similarly, Mr. Heffelfinger's invoice to plaintiffs shows that following the site inspection, he worked on a comparative settlement estimate, conducted an additional site visit to assess exterior repairs, spoke with a contractor and twice revised his

---

[3] Although plaintiffs question why Allstate waited approximately two weeks after receipt of the official demand for appraisal for Mr. Hoffman to acknowledge his appointment, I would be remiss to ignore the fact that the Christmas and New Year holidays fell in that precise timeframe. Mr. Hoffman reached out to plaintiffs on the Monday following the first of the year.

appraisal estimate. Id., Ex. 3K. After the two appraisers spoke in mid-May 2016, there was a one-month time lapse explained, in part, by Mr. Heffelfinger's trip to Florida for his mother's funeral. Id., Ex. 3M. Upon his return, the appraisers spoke again and submitted the claim to the umpire. Id., Ex. 3L.

Although plaintiffs question why the investigation took over four and a half months to complete, plaintiffs fail to meet their burden of establishing that such a delay was unreasonable, that it was solely attributable to Allstate or that Allstate had no reasonable basis for causing any such delay. Indeed, "[t]he only evidence before the court indicates legitimate, if frustrating, delays that are an ordinary part of legal and insurance work." Kosierowski, 51 F. Supp. 2d at 590. Where "delay is attributable to the need to investigate further or even to simple negligence, no bad faith has occurred." Id.

Taking the evidence in the light most favorable to plaintiffs, I conclude that they have failed to adduce sufficient proof[4] from which a reasonable jury could conclude that Allstate lacked a reasonable basis for its handling of the appraisal process. Even imputing all of Mr. Hoffman's actions to Allstate, the relatively minimal delay of eight months from plaintiffs'

---

[4] In a last-ditch effort to preserve their bad faith claim, plaintiffs offer the cursory argument that "should the Court find that Plaintiffs have not yet met this burden [of establishing a genuine issue of material fact as to Allstate's bad faith], discovery in this matter is set to end on June 6, 201[7]. Plaintiffs' depositions have not yet taken place, nor has Plaintiffs' deposition of Allstate's representatives. Plaintiff[s] respectfully request[] the opportunity to supplement this report once depositions have been completed and discovery has concluded." Pls.' Supp. Resp. Opp'n , ECF No. 23, at 19.)

In order for plaintiffs to obtain such relief, however, Federal Rule of Civil Procedure 56(d) requires them to show "by affidavit or declaration that, for specified reasons, they cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Plaintiffs neither present any such affidavit nor suggest what additional facts they hope to find that will allow a showing of bad faith against the backdrop of the existing uncontested evidentiary record. Without any explanation as to what essential facts are needed, I decline to allow such a fishing expedition.

November 10, 2015 original demand for appraisal to the umpire meeting on July 5, 2016 is insufficient to establish bad faith. In that period, both parties' appraisers were actively conducting investigations, with much of the actual delay attributable to plaintiffs' own adjuster. I therefore conclude that plaintiffs' bad faith claim does not withstand summary judgment review.

## CONCLUSION

In light of the foregoing, I find no remaining genuine issue of material fact on plaintiffs' bad faith claim. Accordingly, I will grant Allstate's motion for summary judgment and enter judgment in favor of Allstate on the remainder of plaintiffs' amended complaint.

An appropriate Order follows.